IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

UNITED STATES OF AMERICA,                )
                                         )   Civil No. 09-120 Erie
                                         )   Criminal No. 05-32 Erie
                                         )   Judge Sean J. McLaughlin
           v.                            )
                                         )
WAYNE STEPHEN FALCIGLIA,                 )
                                         )

**MEMORANDUM OPINION AND ORDER**

McLAUGHLIN, SEAN J., J.

This matter is before the Court upon Defendant Wayne Falciglia's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255.

**I. BACKGROUND**

On July 13, 2005, a grand jury in the Western District of Pennsylvania returned a one-count indictment charging the defendant, Wayne Falciglia ("Falciglia"), with stealing firearms from a federally licensed firearms dealer in violation of 18 U.S.C. Sections 922(u) and 924(i)(1). Following a jury trial, Falciglia was found guilty and sentenced to 102 months of imprisonment.

Falciglia's arrest and indictment stemmed from a burglary of Baldini's Gun Shop in Erie, Pennsylvania, on August 14, 2000. Police officers responding to the break-in found several broken display cases and determined that 26 firearms had been stolen. Officers also discovered what appeared to be a small amount of blood, a sample of which they sent to the Pennsylvania State Police Bureau of Forensic Services for examination.

Several months later, officers of the city of Cheektowaga, New York, found three of the stolen firearms in Falciglia's possession while executing an arrest warrant for an unrelated matter. DNA taken from Falciglia in conjunction with that arrest was matched to the blood found in Baldini's gun shop. In order to confirm the match, a search warrant was executed authorizing the seizure of a second sample of Falciglia's blood. The warrant was supported by an affidavit from

Special Agent Thomas Truchanowicz of the Bureau of Alcohol, Tobacco, Firearms and Explosives ("ATF"). Following the execution of this warrant, Falciglia waived his Miranda rights and admitted to Agent Truchanowicz and two other federal agents that he had stolen firearms from Baldini's Gun Shop. Subsequently, the Bureau of Forensic Services confirmed the match between Falciglia's blood and the DNA profile developed from the blood sample found at the crime scene.

Prior to trial, Falciglia moved to suppress the statements that he made to federal agents following the execution of the warrant to obtain his blood. Following a hearing, this Court denied the motion to suppress.

On the eve of trial, the government produced a recorded telephone conversation between Falciglia and his wife that took place while he was in prison. In the recorded conversation, Falciglia told his wife:

> Well, I got a charge coming up from Erie County, no, from Erie, Pennsylvania. Probably going to be breaking into the gun store. 'Cause they came here with a court order for DNA which means that I must have cut myself. But I'm not worried about that one because that one I can get out of because they want me to give up fucking Carl, and Tony, and fucking Chris. I said I would do that for free. [Laughter]. They looked at me like I was crazy and I said, listen, I'm sitting here because of them three ass holes, I said, so you can have them for free, you ain't even gotta give me a fucking deal.

Falciglia moved to suppress this recording and for reconsideration of his previous motion to suppress, arguing that the conversation demonstrated that he had been promised a deal by law enforcement in return for his assistance. This Court denied reconsideration of the prior motion to suppress but granted the motion to suppress the recording. The latter ruling, however, allowed the government to introduce the recorded conversation for impeachment purposes if Falciglia elected to testify in his defense.

Following his trial and conviction, Falciglia appealed to the Third Circuit. See United States v. Falciglia, 2008 WL 2428411 (3rd Cir. 2008). Falciglia raised three issues on appeal: (1) that his Miranda waiver was not voluntary and knowing because the interrogating agents had misled him by promising a lenient sentence for his assistance; (2) that the trial court denied him his constitutional right to a defense by ruling that the incriminating statements contained in the recorded telephone conversation between Falciglia and his wife could be used for impeachment purposes; and (3) that

the sentencing court misinterpreted the Sentencing Guidelines in declining to grand a downward departure. The Third Circuit rejected each of these arguments and affirmed Falciglia's judgment and sentence. Id. at *2.

Falciglia filed the instant motion for relief pursuant to 28 U.S.C. § 2255 on May 26, 2009. On June 19, 2009, the government filed a response in opposition. This matter is ripe for review.

## II. STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255, a federal prisoner may move the sentencing court to vacate, set aside or correct a sentence "upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack." 28 U.S.C. § 2255. When a motion is made under 28 U.S.C. § 2255, the question of whether to order a hearing is committed to the sound discretion of the district court. In exercising that discretion, the court must accept the truth of the petitioner's factual allegations unless they are clearly frivolous on the basis of the existing record. United States v. Day, 969 F.2d 39, 41-42 (3rd Cir. 1992). A motion pursuant to Section 2255 can be dismissed without a hearing only if (1) its allegations, accepted as true, would not entitle the Petitioner to relief, or (2) the allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact. United States v. Askew, 2010 WL 1409657 (W.D. Pa. 2010) (citing United States v. McCoy, 410 F.3d 124, 134 (3rd Cir. 2005)).

Upon consideration of Falciglia's motion for relief, the government's response thereto, and the pleadings and documents of record, I conclude that no hearing is necessary and that Falciglia's motion should be denied for the reasons set forth below.

## III. DISCUSSION

In his § 2255 Motion, Falciglia asserts five separate "grounds" in support of his request for

relief. Ground One alleges that trial counsel was ineffective for failing to argue at trial that the blood found at the crime scene was not human blood, refusing to allow Falciglia to testify in his own defense, and for not calling an alibi witness. In Ground Two, he contends that trial counsel was ineffective for failing to object to the government's alleged failure to disclose exculpatory evidence in violation of Brady v. Maryland, 373 U.S. 83 (1963). Ground Three asserts that this Court's ruling as to what the jury would be told concerning one of Falciglia's previous incarcerations constituted error and deprived Falciglia of his presumption of innocence. Ground Four alleges that appellate counsel was ineffective for failing to raise any of the aforementioned issues. Finally, Ground Five is duplicative of Ground One wherein he asserts that trial counsel was ineffective for failing to object to the admission of the blood sample found at the crime scene. For the reasons which follow, I find that each of these grounds lacks merit.[1]

### A. Ineffective Assistance of Trial Counsel

In order to demonstrate ineffective assistance of counsel, Falciglia must satisfy the Supreme Court's two-pronged test as set forth in Strickland v. Washington, 466 U.S. 668 (1984). This test requires him to demonstrate (i) that defense counsel's performance fell "below an objective standard of reasonableness," thus rendering the assistance so deficient that the attorney did not function as "counsel" as the Sixth Amendment guarantees, see id. at 687-88, and (ii) that counsel's ineffectiveness prejudiced the defense such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." See id. at 694. See also Flamer v. State of Delaware, 68 F.3d 710, 727-28 (3rd Cir. 1995). A "reasonable probability" is a probability "sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

In explaining the defendant's burden under "prong one" of this test, the Supreme Court has admonished that "[j]udicial scrutiny of counsel's performance must be highly deferential" because

---

[1] Falciglia has also filed a motion for counsel. That motion is denied.

"[i]t is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable." Strickland, 466 U.S. at 689. Thus, there is a "strong presumption that counsel's conduct falls within the range of reasonable professional assistance." Id. at 688.

Under the second prong, a criminal defendant alleging prejudice must show "that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Lockhart v. Fretwell, 506 U.S. 364, 369 (1993). Accordingly, "an analysis focusing solely on the mere outcome determination, without attention to whether the result of the proceeding was fundamentally unfair or unreliable, is defective." Id. "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible," a court may dismiss an ineffective assistance of counsel claim without determining whether counsel's representation was deficient if it finds that the petitioner cannot satisfy the prejudice prong. United States v. Cross, 308 F.3d 308, 315 (3rd Cir. 2002); United States v. Curtis, 2007 WL 756711, *5 (N.D. Ok. 2007) ("Even if the Court accepts Defendant's allegations as true, and finds that trial counsel performed deficiently . . . the Court finds Defendant cannot satisfy the prejudice prong of Strickland.").

In his first and fifth grounds for relief, Falciglia contends that trial counsel was ineffective for failing to object to the government's use of the blood found at the crime scene as evidence in the government's case in chief. Falciglia asserts that a species test performed by the Pennsylvania Bureau of Forensic Services indicated that the blood might not have been human and, therefore, it should have been suppressed. Falciglia also contends that counsel should have requested a Franks hearing[2] to challenge the search warrant used to obtain a second, confirmatory sample of his blood.[3]

---

   [2]   Franks v. Delaware, 438 U.S. 154, 155-56 (1978), allows a defendant to request a hearing challenging the veracity of a sworn statement used by police to procure a search warrant "where the defendant makes a substantial preliminary showing that a false statement knowingly and intentionally, or with reckless disregard for the

Falciglia's contention that trial counsel failed to challenge the government's use of the crime scene blood is not supported by the record. Counsel repeatedly raised the argument that the blood found at the crime scene was not human blood, was not blood at all, or was not Falciglia's blood. See Trial Transcript App. 632-34 (arguing that Falciglia had left no "blood" at the gun shop); App. 636 (arguing that the DNA found on the pellet pack at the crime scene "did not come from any blood from [Falciglia]"); App. 638 (arguing that the blood found at the crime scene "was not human" and that "whatever was on that pellet pack was not human blood"); App. 639 (arguing that "whatever the heck is on that pellet pack is not human blood); App. 641-42 (arguing that the blood on the pellet pack more likely came from the police department dog used to investigate the crime scene and that "the most likely explanation . . . is that it's from an animal"). Counsel also specifically challenged the results of a species test conducted by serologists on the blood evidence, arguing that the test results demonstrated that the blood found at the crime scene might have come from an animal rather than a human. See, e.g., Trial Transcript at App. 638 (arguing that "the test showed that it was not human blood"). Counsel thoroughly cross-examined two scientists who testified on behalf of the government that they had tested Falciglia's blood and matched his DNA to the DNA in the blood found at the crime scene, attempting to create doubt in the minds of the jury as to whether the blood found at the crime scene matched Falciglia's DNA. See Trial Transcript App. 468-82, 498-508.

Moreover, even if the Court were to assume, *arguendo*, that counsel's performance was

---

truth, was included by the affiant in the warrant affidavit, and if the allegedly false statement is necessary to the finding of probable cause . . .". No such showing was made in this case.

3   Although it is not entirely clear from his petition, Falciglia's argument appears to be that ATF Agent Truchanowicz lied in the affidavit used to support the warrant application for the confirmatory blood draw by indicating that the blood found at the crime scene had initially matched Falciglia's DNA despite his knowledge that it was not human blood.

deficient in this regard, Falciglia has failed to demonstrate a reasonable probability that "the result of the proceeding would have been different" if not for the alleged errors. See Strickland, 466 U.S. at 694. As noted above, the government presented overwhelming evidence of guilt against Falciglia at trial, including the presence of his DNA at the crime scene, his possession of several of the stolen firearms at the time of his arrest and his voluntary confession to three federal agents that he had robbed the gun shop. The weight of the evidence presented by the government was such that there is not a reasonable probability that the result of the proceeding would have been different had the alleged errors not occurred. See, e.g., United States v. Harrison, 2010 WL 1730824, *3 (E.D. Pa. 2010) ("[B]ecause the evidence against Harrison was overwhelming, the result of the trial would not likely have been different, absent the claimed errors); Loliscio v. Goord, 263 F.3d 178, 196 (2nd Cir. 2001) (affirming denial of habeas corpus motion and noting "the considerable amount of circumstantial evidence of petitioner's guilt presented at trial"); Clayton v. Gibson, 199 F.3d 1162, 1178 (10th Cir.1999) (rejecting claim of prejudice even in face of defense counsel's errors because evidence was overwhelming); Tokar v. Bowersox, 198 F.3d 1039, 1049 (8th Cir. 1999) (same).

      Falciglia next contends that trial counsel was ineffective based upon the allegation that he refused to allow Falciglia to testify in his own defense and also refused to call an alibi witness. "It is well established that the right of a defendant to testify on his or her behalf at his or her own criminal trial is rooted in the Constitution." United States v. Pennycooke, 65 F.3d 9, 10 (3rd Cir. 1995). A "'barebones assertion by the defendant' that he was denied his right to testify is insufficient to require a hearing." Robinson v. United States, 2009 WL 4110319, *4 (D. Virgin Islands 2009) (quoting D'Amario v. United States, 403 F.Supp.2d 361, 371 (D.N.J. 2005)). In order to prevail on a claim that trial counsel refused to allow a client to testify, the defendant "must do more than just assert that his lawyer refused to allow him to testify." United States v. Aikens, 358 F.Supp.2d 433, 436 (E.D. Pa 2005) (quoting United States v. Smith, 235 F.Supp.2d 418, 424 (E.D. Pa. 2002)); see also Lizardo v. U.S., 2008 WL 501175 (D. Virgin Islands 2008) (noting that "Lizardo has done nothing more than baldly assert that his trial counsel refused to allow him to testify" and,

therefore, "has failed to persuade [the] Court that counsel provided constitutionally deficient assistance . . ."); Martinez v. Wynder, 2007 WL 1725189, at *5 (E.D. Pa. June 12, 2007) ("[I]n order to demonstrate prejudice, a petitioner must put forth more than a 'bald assertion' that he was not allowed to testify, including some specifics as to what his testimony would have been."); Jones v. Kyler, 2007 WL 187689 (E.D. Pa. Jan.22, 2007) (adopting report and recommendation that petitioner was not prejudiced under Strickland because he gave "no indication of what his testimony would have entailed"). Rather, the defendant "must produce something more than a bare, unsubstantiated, thoroughly self-serving, and none too plausible statement that his lawyer (in violation of professional standards) forbade him to take the stand." United States v. Perkins, 2008 WL 399336, *6 (E.D. Pa. 2008) (quoting Smith, 235 F.Supp.2d at 424). "For instance, it may be supported by an affidavit from the lawyer that allegedly prevented the testimony, or inferences from the trial record." Luperella v. United States, 2007 WL 2904201 (D. N. J. 2007) (citing Underwood v. Clark, 939 F.2d 473, 475-76 (7th Cir.1991); D'Amario, 403 F.Supp. 2d at 371).

Here, Falciglia only alleges in conclusory fashion the following: "Attorney also refused to call an alibi witness + refused to let me testify." Falciglia has failed to provide an affidavit from his trial counsel or anyone else attesting to the fact that he was not permitted to testify, nor has he indicated what his testimony would have been. Moreover, he did not indicate that he desired to testify, even when defense counsel informed the Court on multiple occasions in Falciglia's presence that he did not intend to testify. See Trial Transcript App. 596, 605; see also Carpenter v. United States, 478 F.Supp.2d 205, 217 (D. R.I. 2007) (noting that a defendant is presumed to have waived his right to testify on his own behalf if he sits silently at trial and does not attempt to take the stand). Falciglia has also failed to provide the name of any potential alibi witness or indicate what the nature of the alibi testimony would have been. These are precisely the type of "barebones assertions" that are insufficient to merit a hearing, much less habeas relief. See Robinson, 2009 WL 4110319, *4; Aikens, 358 F.Supp.2d at 436 ("[I]n order to prevail on trial counsel's alleged refusal to allow a client to testify, the petitioner must do more than just assert that his lawyer refused to allow him to

testify.").

Furthermore, as discussed more fully above, the evidence of Falciglia's guilt at trial was overwhelming. If he had taken the stand, he would have been impeached through the utilization of his prior criminal convictions as well as by the recorded conversation with his wife in which he admitted that he must have cut himself while committing the crime. Given the DNA evidence, his previous confession, and his statements to his wife, it is difficult to see how an alleged alibi witness's testimony could have, with the requisite probability, altered the outcome of the trial.

### B. "Brady" Violation

In his second ground for relief, Falciglia argues that the government failed to disclose exculpatory evidence in violation of its obligations under Brady v. Maryland, 373 U.S. 83 (1963). Specifically, Falciglia contends that the government deliberately withheld the compact disc containing the recorded telephone conversation between Falciglia and his wife in which he admitted that he must have cut himself while robbing the gun store. As noted above, the disc was made available to Falciglia only a short time prior to trial.

In Brady, the United States Supreme Court held that "the suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution." Id. at 87. To state a valid Brady claim, "a plaintiff must show that the evidence was (1) suppressed, (2) favorable, and (3) material to the defense." Riley v. Taylor, 277 F.3d 261, 301 (3rd Cir. 2001) (citing United States v. Perdomo, 929 F.2d 967, 970 (3rd Cir.1991)).

As an initial matter, Falciglia fails to state a Brady claim because the evidence in question is not "favorable" to Falciglia. Rather, the recording contains the admission made by Falciglia to his wife that he must have cut himself while robbing the gun store, a statement which is clearly *inculpatory*. Indeed, Falciglia successfully moved to suppress this evidence prior to trial on the basis that the government had not provided the inculpatory recording to the defense in a timely fashion.

Falciglia nonetheless argues that the conversation recorded on the CD undermines the validity of the incriminating statements that he made to law enforcement during questioning because, in his view, it supports the inference that ATF agents had offered him a plea deal in return for his confession to the robbery. Falciglia contends he would not have made those statements had he not been offered a plea bargain that never materialized.

Falciglia's arguments relative to the conversation recorded on the CD were conclusively rejected by the Third Circuit on direct appeal. Addressing Falciglia's argument that law enforcement agents misled Falciglia into giving incriminating statements by offering leniency, the Third Circuit stated:

> Falciglia first claims that a state police officer and federal law enforcement agents misled him into giving incriminating statements when questioning him about the stolen guns. By his account, the agents suggested he would receive a more lenient sentence in exchange for incriminating his accomplices. He argues that the officers told him that his cooperation would be "helpful," which he interpreted as meaning that any statements he made would not be used against him but rather would be used against his coconspirators. Our sister courts of appeals are uniform in holding that an officer may indicate that the defendant's statements could bring about leniency without violating Miranda. See, e.g., United States v. Gaines, 295 F.3d 293, 299 (2nd Cir.2002) ("[T]here is no inconsistency between the required warning that the defendant's statement may be used against him and a further statement that cooperation can help him. Both are true."). But see id. (noting "that unfulfillable promises or certain other misrepresentations made to a suspect might render a confession involuntary because they overcome his desire to remain silent."). Thus, even if the agents had made promises, those promises did not render the waiver involuntary.
>
> Considering the totality of the circumstances, Miller v. Fenton, 796 F.2d 598, 608 (3rd Cir.1986), we hold that Falciglia's waiver of his Miranda rights was knowing and voluntary. He was not under pressure during the brief interrogation in which he made incriminating statements. Moreover, he had substantial experience within the criminal justice system. *We also agree with the District Court that nothing in a recorded phone conversation between Faciglia and his wife (which he both seeks to suppress and to rely upon, depending on the issue) supports his claim that his waiver was involuntary.*

Falciglia, 2008 WL 2428411, *1 (emphasis added). Once a matter has been raised and rejected on direct appeal, that issue is not subject to relitigation on collateral attack. See, e.g., United States v.

Smith, 235 F.Supp.2d 418, 428 (E.D. Pa. 2002) ("Section 2255 may not be employed to relitigate questions, on collateral attack, which were raised and rejected on direct appeal) (citing United States v. DeRewal, 10 F.3d 100, 105 n. 4 (3rd Cir. 1993) (noting that Section 2255 generally "may not be employed to relitigate questions which were raised and considered on direct appeal.")).

### C. *Ruling as to Previous Incarceration*

Ground Three of Falciglia's Section 2255 motion contends that his presumption of innocence was impaired by a reference to his prior incarceration and the reason therefore. At trial, the government called an employee of the United States Federal Penitentiary in Allenwood to the stand to testify as to statements made by Falciglia while incarcerated at Allenwood relative to his involvement in the gun shop robbery. Prior to the witness's testimony, defense counsel sought a ruling as to what the witness would be permitted to inform the jury concerning the reason for Falciglia's presence in jail. After seeking input from both the government and defense counsel, the Court stated:

> If [the defendant] insist[s] on [the jury] being told something, they're going to be told that . . . [h]e was serving time for, whatever the charge he pled to, the obliteration of the serial number, period. It's accurate and the jury doesn't have to know any more than that.

Trial Transcript, App. 533. Ultimately, however, neither party asked the witness any questions as to the reason for Falciglia's incarceration, nor did the Court inform the jury as to the reason. Defense counsel did not object to questioning from the government, and appellate counsel did not raise any issues concerning Falciglia's presumption of innocence on appeal. Thus, the only issue is whether Falciglia's presumption of innocence was impaired by the reference to his prior incarceration.

The government contends that, because Falciglia did not raise this issue on direct appeal, it is procedurally barred. See Bousley v. United States, 523 U.S. 614, 622 (1998). "Where a defendant has procedurally defaulted a claim by failing to raise it on direct review, the claim may be raised in habeas only if the defendant can first demonstrate either 'cause' and actual 'prejudice,' or that he is 'actually innocent.'" Id. (citing Murray v. Carrier, 477 U.S. 478, 485 (1986); Wainwright v. Sykes,

433 U.S. 72, 87 (1977)). "Cause" consists of "something external to the petitioner, something that cannot be fairly attributable to him," and "prejudice" means that the alleged error "worked to his actual and substantial disadvantage." Coleman v. Thompson, 501 U.S. 722, 753 (1991); United States v. Frady, 456 U.S. 152, 170 (1982). Although Falciglia argues that the reference to his previous incarceration impugned his presumption of innocence, he has not attempted to demonstrate either cause or prejudice for the default. As such, the substantive claim contained in Ground Three of his Section 2255 motion is subject to procedural default.

Significantly, however, Petitioner's fourth ground for relief asserts that his appellate counsel acted ineffectively in failing to raise "any" of the other issues contained in his Section 2255 motion. "[A]n exception to the procedural default rule is that a defendant need not demonstrate cause and prejudice when he raises a claim of ineffective assistance of counsel." United States v. Wolfe, 2010 WL 1372448, *3 (W.D. Pa. 2010) (citing DeRewal, 10 F.3d at 104) (holding that a petitioner "[is] not required to show 'cause and prejudice' with respect to his failure to raise his ineffective assistance of counsel claim on direct appeal."). As such, "although the substantive claims are procedurally defaulted, Petitioner's related ineffective assistance of counsel claims are not." Wolfe, 2010 WL 1372448 at *3. Consequently, this claim will be discussed below in the context of Petitioner's assertion of ineffective assistance of appellate counsel.

*D. Ineffective Assistance of Appellate Counsel*

The Strickland test applies to the performance of both trial and appellate counsel. Lewis v. Johnson, 359 F.3d 646, 656 (3rd Cir. 2004). Appellate counsel does not have a duty to advance frivolous arguments or even every non-frivolous argument that could have been made; however, appellate counsel is ineffective if counsel "omitted significant and obvious issues while pursuing issues that were clearly and significantly weaker." United States v. Askew, 2010 WL 1409657, *8-9 (W.D. Pa. 2010) (citing Mayo v. Henderson, 13 F.3d 528, 533 (2nd Cir. 1994)). Appellate counsel is not obligated to raise all possible grounds for appeal, but "may select those which maximize the

likelihood of a successful appeal." Id. (citing Smith v. Robbins, 528 U.S. 259, 288 (2000)).

The test for prejudice in the appellate context "is not whether petitioner would likely prevail upon remand, but whether the sentence or judgment would likely have been reversed and remanded if the issue had been raised on direct appeal." Mayo, 13 F.3d at 533 (citing United States v. Mannino, 212 F.3d 835, 847 (3rd Cir. 2000)). Thus, a petitioner must demonstrate that "there is a reasonable probability that the result of the appeal would have been different had counsel's stewardship not fallen below the required standard." Id. (quoting Mannino, 212 F.3d at 845).

Falciglia asserts that appellate counsel erred in failing to raise each of the grounds for relief contained in the instant Section 2255 motion. As discussed above, I found no merit to the claims raised in Grounds One, Two and Five. It is well established that appellate counsel does not act ineffectively by failing to raise meritless arguments on appeal. See, e.g., United States v. Sanders, 165 F.3d 248, 253 (3rd Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."); United States v. Jackson, 2010 WL 1688543, *8 (E.D. Pa. 2010 ("Under Strickland, Jackson's appellate counsel cannot be ineffective for failing to raise a meritless issue on appeal."); see also Strickland, 466 U.S. at 691 (failure of counsel to pursue fruitless claims "may not later be challenged as unreasonable"). In addition, contrary to Falciglia's contention, appellate counsel did raise issues related to the voluntariness of Falciglia's confession, the nature of the blood sample found at the scene of the crime, and the government's alleged suppression of the recorded telephone conversation between Falciglia and his wife.

As noted above, Ground Three of Falciglia's motion asserts that his presumption of innocence was impaired when the jury learned from a government witness that Falciglia had previously been incarcerated. Although that claim has been procedurally defaulted, the related claim that appellate counsel should have raised it on appeal is not. Consequently, in order to determine whether appellate counsel acted ineffectively in failing to raise the issue, I must examine whether there is a reasonable probability that Falcigilia's claim would have been meritorious on appeal. See,

e.g., Mannino, 212 F.3d at 840 ("[I]t is not possible to resolve the Strickland claim without first determining if [the underlying] challenge . . . is meritorious. If it is not meritorious, the defendants can not successfully argue that counsel's failure to raise the claim on direct appeal denied them their constitutional right of representation.").

In Estelle v. Williams, 425 U.S. 501 (1976), the United States Supreme Court held that a defendant's presumption of innocence might be impaired when the defendant is forced to clearly identifiable prison clothing throughout his or her trial. Estelle, 425 U.S. at 503-05. The Court found that the prison attire served as a "constant reminder of the accused's condition" and "a continuing influence throughout the trial" such that it might corrupt a juror's judgment and result in a denial of the accused's right to a fair trial. Id. at 504-05. Subsequent cases have held that a defendant's due process rights might be similarly violated when the prosecution or a witness repeatedly reminds the jury that the defendant has previously been incarcerated. See United States v. Faulk, 53 Fed. Appx. 644, 647 (3rd Cir. 2002) ("[W]hile questioning Elam the prosecutor disclosed to the jury that Faulk was incarcerated. This may, in certain circumstances, violate a defendant's due process right to a fair trial."). However, "[t]he rule of Estelle does not apply . . . to every 'mere utterance of the words [jail, prison, or arrest],' without reference to context or circumstances." United States v. Atencio, 435 F.3d 1222, 1237 (10th Cir. 2006) (quoting United States v. Villabona-Garnica, 63 F.3d 1051, 1058 (11th Cir. 1995)). This is because "the impact of referring to a defendant's incarceration is not constant as it is with prison garb." United States v. Washington, 462 F.3d 1124, 1136-37 (9th Cir. 2006). Accordingly, references to incarceration must be pervasive and frequent enough to serve as a "constant reminder" to the jury that the defendant is or has been a prisoner before they will rise to the level of a due process violation. Faulk, 53 Fed. Appx. at 647. Other federal appellate courts have similarly declined to find a due process violation in cases involving "isolated," "brief," or "fleeting" references to the defendant's incarceration. See Villabona-Garnica, 63 F.3d at 1058 (finding a defense witness's remarks during cross-examination, which revealed the defendant's prior incarceration, "unlikely to prejudice the jury sufficiently to rise to the level of a due process

violation" in part because the comments were "quite brief" and added nothing to the government's case); United States v. Atencio, 435 F.3d 1222, 1237 (10th Cir. 2006) (finding that the prosecutor's comment that the defendant was in jail did not impair the defendant's presumption of innocence because it was "not a 'continuing' occurrence") (quoting United States v. Lonedog, 929 F.2d 568, 571 (10th Cir. 1991) (same)); Washington, 462 F.3d at 1136.

Here, the references to Falciglia's incarceration occurred during the short testimony of a single witness. The witness, an employee of a federal penitentiary, testified as to incriminating statements made by Falciglia during his interrogation by federal agents while incarcerated at the facility. During questioning by the prosecution, the witness made two references to Falciglia being an "inmate" at the time he was interviewed. See Trial Transcript App. 536. Defense counsel, during cross-examination, then asked several general questions of the witness concerning prison procedures and protocol as pertaining to an inmate being interviewed by an outside agent. Id. at 540-50. These questions did not specifically name or reference Falciglia and were utilized by defense counsel in an attempt to undermine the impact of Falciglia's voluntary confession. The references were both brief and passing, and primarily addressed foundational issues as to Falciglia's interrogation. Viewed in context, the references did not constitute a "constant reminder" to the jury that Falciglia had been incarcerated and did not impair Falciglia's presumption of innocence. Faulk, 53 Fed. Appx. at 647; Villabona-Garnica, 63 F.3d at 1058; Washington, 462 F.3d at 1136. Consequently, this claim lacks merit, and appellate counsel did not perform ineffectively in failing to raise it on appeal.

## IV. Conclusion

For the reasons stated herein, Falciglia's Section 2255 Motion is denied. Further, this Court will not issue a certificate of appealability in this case. A certificate of appealability shall issue under 28 U.S.C. Section 2255 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. Section 2253(c)(2). Because I find that Falciglia has not made the

requisite showing of the denial of a constitutional right, a certificate of appealability is not appropriate.

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | Civil No. 09-120 Erie |
| | ) | Criminal No. 05-32 Erie |
| | ) | Judge Sean J. McLaughlin |
| v. | ) | |
| | ) | |
| WAYNE STEPHEN FALCIGLIA, | ) | |
| | ) | |
| | ) | |

## ORDER

AND NOW, this 7th day of June, 2010, for the reasons set forth above, it is hereby ORDERED that Petitioner's Motion to Vacate Judgment pursuant to 28 U.S.C. § 2255 is DENIED.

IT IS FURTHER ORDERED that, pursuant to 28 U.S.C. § 2253(c), Petitioner has not made a substantial showing of the denial of a constitutional right and is not entitled to a certificate of appealability.

/s/ - Sean J. McLaughlin
United States District Judge

cm: All parties of record.